**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1032-WJM-KLM

KEITH HOYT,

  Plaintiff,

v.

U.S. BANK N.A., a Delaware corporation,

  Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Keith Hoyt ("Plaintiff") brings this action against his former employer, U.S. Bank N.A. ("Defendant"), for discriminatory termination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). (ECF No. 1.) Before the Court is Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 29.) For the reasons set forth below, the Motion is denied.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

The following relevant facts are viewed in the light most favorable to the Plaintiff, and are undisputed except where noted.

Defendant is a nationally chartered bank operating a Small Business Administration division pursuant to the federal government's Small Business Administration loan program. (Deposition of Maureen McGovern ("McGovern Dep.") (ECF Nos. 29-2 & 46-2) pp. 23-24.) In March 2005, Plaintiff was hired at age 59 as a regional sales manager for Defendant's Small Business Administration division by either Vicki Bunting or Dave Bartram. (McGovern Dep. p. 21-23; Deposition of Keith Hoyt ("Hoyt Dep.") (ECF No. 35-2) pp. 5, 28.) As a regional sales manager, Plaintiff covered a specific geographical region, managed a team of business development officers ("BDOs") in that region, and collaborated with bankers in other departments. (McGovern Dep. pp. 23-24; Hoyt Dep. pp. 45-46, 51-52.)

In the fall of 2009, Erik Daniels became the national sales manager for the Small Business Administration division with direct supervisory authority over Plaintiff. (Deposition of Erik Daniels ("Daniels Dep.") (ECF Nos. 29-4, 35-1) p. 24.)  Within a few months of Daniels's hire, Steve Mattern, who was then a regional sales manager, told Plaintiff that Daniels had made a comment that there were two managers who were too old for the job and ought to have enough sense to retire, one of whom was impliedly Plaintiff.  (Hoyt Dep. pp. 199-200.)

In early 2010, Plaintiff was issued his 2009 Performance Review, which gave him an overall rating of 3, meaning "solid performance" on a scale of 1 ("exceptional") to 5 ("not effective").  (ECF No. 29-11 at 1, 3.)  The 2009 Performance Review included a suggestion to "develop in the area of credit analysis" and a goal of "aggressive management of sales performance".  (*Id.* at 4.)

Plaintiff testified at his deposition that in the fall of 2010, after he returned from a week off of work due to illness, Daniels told Plaintiff that he thought it was a mistake for Plaintiff to come back to work because the job is too stressful for him and he "just can't handle it anymore."  (Hoyt Dep. p. 208.)

In February 2011, Plaintiff called Human Resources to complain that he was disproportionately impacted by a recent company decision to reorganize the geographical regions assigned to each regional sales manager, and suggested that Daniels could be discriminating against him.  (Hoyt Dep. pp. 186-88.)  In the course of that conversation, Plaintiff reported an allegedly sexually harassing comment Daniels made regarding a female employee at a dinner attended by Plaintiff and three male BDOs approximately three years earlier.  (*Id.* pp. 186-92.)  Daniels was informed of

Plaintiff's sexual harassment complaint on February 18, 2011.  (ECF No. 35-4.)  Defendant investigated Plaintiff's allegations of sexual harassment and issued a written warning to Daniels.  (McGovern Dep. pp. 84-85, 105.)

In Plaintiff's 2010 Performance Review, issued in April 2011, he received an overall rating of 4, meaning "needs improvement".  (ECF No. 29-12.)  An overall rating of 4 makes the recipient ineligible for a long-term incentive bonus payment.  (Daniels Dep. p. 80.)  An overall rating of 4 also generally leads to an action plan or development plan, which identifies specific areas of unsatisfactory performance and requires improvement in those areas within a specified time frame.  (McGovern Dep. p. 65.)  Plaintiff received a Development Plan as part of his 2010 Performance Review, which specified a need to improve his knowledge of credit transactions, build collaborative relationships, be proactive as a leader of his BDO team, and hold his BDOs accountable.  (ECF No. 29-12.)

On June 29, 2011, Plaintiff was placed on a 60-day Action Plan, which stated that "we have not seen the improvement necessary to satisfy the Development Plan" and identified several areas of failures to meet expectations, including failure to hire any new BDOs, failure to manage poorly performing BDOs, failure to communicate and follow through on credit training, failure to successfully follow through in meetings and communications with supervisors, and low production numbers.  (ECF No. 29-13.)  The Action Plan indicated that failure to improve in the identified areas "may result in further disciplinary action, up to and including termination", and that the Action Plan disqualified Plaintiff from receiving any incentive bonuses during the quarter in which it was issued.  (*Id.*)

4

Two other regional sales managers in the Small Business Administration division, Han Kim and Mark Gibson, were also given Development Plans in 2011 based on a failure to meet production goals in their 2010 Performance Reviews. (McGovern Dep. p. 66.) However, neither Kim nor Gibson were placed on subsequent performance improvement plans in 2011. (Daniels Dep. p. 96.)

After completion of the 60-day Action Plan period, Daniels recommended to his supervisor, Julie Huston, that Plaintiff be terminated. (Daniels Dep. pp. 23, 191.) Plaintiff was terminated on September 7, 2011, at the age of 66. (McGovern Dep. pp. 118-19; Hoyt Dep. p. 5.)

Plaintiff filed this action on April 18, 2013. (ECF No. 1.) Defendant's Motion was filed on March 25, 2014. (ECF No. 29.) Plaintiff filed a Response (ECF No. 35) and Defendant filed a Reply (ECF No. 46).

### III.  ANALYSIS

Plaintiff's Complaint brings two claims: (1) discriminatory termination based on age in violation of the ADEA; and (2) retaliation. (ECF No. 1 at 5-7.) As Defendant moves for summary judgment as to both claims, the Court will consider each claim in turn.

**A.    Age Discrimination**

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects workers "who are at least 40 years of age," 29 U.S.C. § 631(a), and it was passed "'to promote employment

5

of older persons based on their ability rather than age' and 'to prohibit arbitrary age discrimination in employment.'" *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005) (quoting 29 U.S.C. § 621(b)).

"A plaintiff who seeks to prove that an employer discriminated against him or her can use either direct or circumstantial evidence." *Stone*, 210 F.3d at 1136 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (internal quotation omitted). Where no direct evidence of discrimination exists, a Plaintiff may prove discrimination by indirect or circumstantial evidence, in which case the claim is analyzed under the *McDonnell Douglas* burden-shifting test. *See Stone*, 210 F.3d at 1137 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Here, Plaintiff's Complaint asserts that Daniels's negative comments constitute "direct evidence—or, at the very least, raise an inference" of discrimination. (ECF No. 1 ¶ 34.) However, in Plaintiff's Response to the Motion, Plaintiff defends his ADEA claim only under the *McDonnell Douglas* framework, and does not contest Defendant's assertion that there is no direct evidence in the record. (ECF No. 35 at 19-20.) On review of Daniels's alleged comments, it is apparent that all of them require an inferential step to support the claim that Plaintiff was discriminatorily terminated because of his age. Evidence that Daniels stated that Plaintiff was too old for the job, while indicative of potential discrimination, is not explicitly related to Plaintiff's

termination. Thus, such comments are "statements which on their face are expressions of personal opinion" rather than a policy that itself constitutes discrimination, and "can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff." *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996). As these comments are not direct evidence of discrimination, *see Riggs*, 497 F.3d at 1117, the Court must proceed to the *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination. *Stone*, 210 F.3d at 1137. A successfully established *prima facie* case creates a presumption of discrimination, and the burden then shifts to Defendant to rebut that presumption by asserting a facially legitimate, non-discriminatory basis for its employment decisions. *Id*. If Defendant does so, the burden shifts back to Plaintiff to offer evidence that age was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext for discrimination. *Id.*

In order to establish a *prima facie* claim for job termination based on age discrimination under the ADEA, a plaintiff must show that: "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was [either not filled or was] filled by a younger person." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920-21 (10th Cir. 2004) (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

The elements of Plaintiff's *prima facie* case are not at issue in the instant Motion. As an employee who was 66 years old at the time he was terminated, Plaintiff is undisputedly a member of the protected class. (*See* Hoyt Dep. p. 5.) Defendant does not dispute that Plaintiff has presented evidence of satisfactory performance,[1] nor does Defendant contest whether Plaintiff's termination was an adverse employment action. Finally, Defendant does not dispute for the purposes of the Motion that Plaintiff was replaced with a younger person. (ECF No. 46 at 8 ¶ 38.) In fact, the Motion fails to raise any argument as to Plaintiff's *prima facie* burden at all, instead focusing exclusively on the pretext prong of the *McDonnell Douglas* analysis. (ECF No. 29-1 at 16.) Therefore, the Court finds that Plaintiff has satisfied his initial burden to present a *prima facie* case of discriminatory termination. *See Rivera*, 365 F.3d at 920-21.

Next, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for Plaintiff's termination. Defendant has presented evidence showing that Plaintiff was terminated for poor performance. (ECF Nos. 29-11, 29-12, 29-13.) The Court finds that this explanation is a legitimate, non-discriminatory basis for Plaintiff's termination.

Accordingly, the burden shifts back to Plaintiff to show that the proffered basis is a pretext for discrimination. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

---

[1] Defendant's argument regarding poor performance appears to be relevant to the second prong of the *prima facie* case, namely whether Plaintiff was performing satisfactorily. However, Defendant frames its argument exclusively in the context of the pretext stage of the *McDonnell Douglas* analysis, and does not argue that Plaintiff has failed to establish a *prima facie* case. (*See* ECF No. 29-1 at 16.) As Defendant fails to contest Plaintiff's *prima facie*, the Court will review Defendant's arguments as they are framed in the Motion, applied only to pretext.

In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's non-discriminatory reason is "unworthy of belief." *Id.*; *see also Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (a plaintiff may meet his pretext burden by presenting "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.") (internal quotation omitted). In determining whether a plaintiff has shown pretext, the Court must consider the plaintiff's evidence in its totality. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

In this case, Plaintiff argues that the basis proffered for his termination was pretextual based on the following evidence: (1) he was treated differently than younger comparators; (2) Daniels failed to provide feedback during his Action Plan, which allegedly set him up to fail; (3) Daniels used subjective criteria in evaluating him; and (4) Daniels made negative comments about Plaintiff's age. (ECF No. 35 at 17, 22-27.) In the Motion, Defendant argues that this evidence is insufficient to show pretext, and further contends that Defendant is entitled to the "same actor inference" that its reasons for terminating Plaintiff were not pretextual. (ECF No. 29-1 at 14-15.)

1. Same Actor Inference

The "same actor inference" is generally applied in cases where an "employee was hired and fired by the same person within a relatively short time span," and raises "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006)

(citing *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991)). This inference arises from the premise that an individual who chose to hire a plaintiff, fully aware of his protected characteristics, would not likely terminate that plaintiff shortly thereafter because of those characteristics. *Id.*

Here, it is undisputed that the same individual did not hire and fire Plaintiff. (*See* McGovern Dep. p. 21; Daniels Dep. p. 191.) Nevertheless, Defendant contends that the "same actor inference" should be extended to circumstances where the same individual treated a plaintiff favorably and then terminated him within a relatively short time span. (ECF No. 29-1 at 15 (citing *Rexroat v. AutoZone, Inc.*, 1999 WL 33604012, at *3 (W.D. Ky. Dec. 9, 1999); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 316 (W.D.N.Y. 1999)).) Defendant argues that, based on Plaintiff's testimony that he received good Performance Reviews up until 2010, Daniels gave Plaintiff a good Performance Review for 2009, only one year before placing him on an Action Plan for poor performance. (ECF No. 46 at 9.) Defendant concludes that Daniels's actions merit the inference that he would not have reviewed Plaintiff's performance favorably one year, and then give Plaintiff a poor Performance Review as a pretext for discriminatory age-based termination one year later. (*Id.*)

Defendant cites no case law in the Tenth Circuit supporting its extension of the "same actor inference" to these facts. (*See id.*) That aside, a further difficulty with Defendant's argument is that it is inconsistent with its own presentation of the facts. As Defendant itself argues, Plaintiff's "performance continued to have the same deficiencies as had been noted by U.S. Bank for several years and several different

managers, despite the instructions to improve." (ECF No. 46 at 10.)  Defendant compares the Performance Reviews for 2008, 2009, and 2010, pointing out that all three contained critiques of Plaintiff's knowledge of credit matters and management of his BDOs.  (ECF No. 29-1 at 15 (citing ECF Nos. 29-10, 29-11, 29-12).)  Taking the facts in the light most favorable to Plaintiff, there is no indication that Daniels treated Plaintiff favorably, followed by unfavorable treatment within a short time span. Accordingly, even assuming without deciding that the "same actor inference" should be extended beyond the hiring and firing context, the Court finds it inapplicable here.

    2.    <u>Comparators</u>

Plaintiff argues that pretext can be inferred from evidence that he was treated differently than Han Kim and Mark Gibson, both of whom were regional sales managers who were younger than Plaintiff.  (ECF No. 35 at 23.)  Defendant argues that Kim and Gibson were treated the same as Plaintiff.  (ECF No. 29-1 at 19-20.)

"[E]vidence that similarly situated employees received different treatment than the plaintiff is indicative of pretext."  *Riggs*, 497 F.3d at 1120.  Co-workers are "similarly situated" if they "deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  *Id.* (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007)).

Here, Plaintiff contends that all three regional sales managers—Kim, Gibson, and himself—failed to meet their production goals in 2010, but only Plaintiff was placed on an Action Plan, and only Plaintiff received an overall rating of 4.  (ECF No. 35 at 23.) Defendant does not contest that Kim and Gibson were similarly situated comparators, in that they all reported to Daniels and were subject to the same performance

evaluation standards. However, Defendant argues that all three employees were treated the same, because all three were issued a rating of 4 on their failures to meet production goals, and all three were placed on development plans. (ECF Nos. 29-1 at 20; 46 at 11.) Defendant further argues that Plaintiff's Performance Review and Development Plan identified other areas of needed improvement, and was not focused solely on production shortfalls, while there is no indication that Kim and Gibson suffered from other such deficiencies. (*Id.*)

Defendant's argument amounts to an assertion that Plaintiff's overall rating of 4—compared to Kim's and Gibson's ratings of 3—resulted from deficiencies other than the production shortfall. The evidence shows that all three employees received a 4 for production, and Kim's and Gibson's 2010 Performance Reviews each contain more ratings of 3 in other areas as compared to Plaintiff's 2010 Performance Review. However, as Daniels himself testified, the overall rating is not achieved by a mathematical calculation from the ratings given in the subcategories; rather, the overall rating is determined in conversations between Daniels and Huston, prior to writing the Performance Review of individual categories. (Daniels Dep. pp. 80-81.)

Because the overall rating was not a result of the aggregate ratings of the subcategories, the evidence permits an inference that the discrepancy between the overall ratings for Plaintiff and his younger comparators could be based on anything, including discrimination. Accordingly, the Court finds that the evidence reveals a dispute of fact, as it is not so conclusive as to prevent a reasonable jury from finding that the difference in Performance Review overall ratings between Plaintiff and his younger comparators is evidence of pretext.

### 3. Feedback and Subjective Criteria

Plaintiff next contends that he was set up to fail in his Performance Reviews and his Development and Action Plans, arguing that Daniels's use of subjective criteria in issuing Performance Reviews and failure to provide sufficient feedback during the Development Plan and Action Plan are indicative of pretext. (ECF No. 35 at 23-24.) Defendant responds that Plaintiff did, in fact, receive sufficient feedback from his supervisors during the Action Plan, and that in any case, a lack of feedback alone does not indicate that Defendant's legitimate non-discriminatory reasons for terminating Plaintiff were pretextual. (ECF No. 46 at 12-13.) Defendant does not contest that Daniels used subjective criteria in issuing Performance Reviews, but argues that subjectivity alone is insufficient to establish pretext. (*Id.* at 13.)

Defendant's argument with respect to whether sufficient feedback was provided points to a dispute of fact. Defendant's other arguments amount to contentions that more is needed to show pretext. The Court agrees that neither evidence of token attempts to improve Plaintiff's performance, nor the use of subjective evaluation criteria, are sufficient to establish pretext on their own. *Cf. Plotke v. White*, 405 F.3d 1092, 1106 (10th Cir. 2005) (holding that "[c]ourts view with skepticism the use of subjective evaluations in making termination decisions" and collecting cases). However, Defendant does not contest that such evidence may be probative of pretext in combination with other evidence of discrimination. (*See id.*; ECF No. 46 at 13 (citing *Bell v. Bolger*, 708 F.2d 1312, 1319-20 (8th Cir. 1983)).)

The Court has already found that the evidence that Defendant treated younger comparators differently can support a finding of pretext. Thus, Defendant's arguments

do not provide reason to disregard this additional evidence of pretext, however limited its probative value if viewed in isolation. Accordingly, the Court finds that both the evidence of a lack of feedback and the use of subjective criteria in performance evaluations can support a finding of pretext here. *See Plotke*, 405 F.3d at 1106.

    4. <u>Age-Related Comments</u>

Plaintiff asserts that the following comments support a finding that Defendant's reasons for terminating him were pretextual: (1) shortly after Daniels was hired in 2009, Steve Mattern, another regional sales manager, told Plaintiff that Daniels had stated that there were two managers who were too old for the job and ought to have enough sense to retire; (2) in the fall of 2010, after Plaintiff took a week off due to illness, Daniels told Plaintiff, "I think this is a mistake you coming back to work. This job's too stressful for you. You just can't handle it anymore."; and (3) a day or two after Plaintiff's termination, regional sales managers Kim and Gibson each called Plaintiff and stated that they believed that Daniels fired Plaintiff because Daniels thought Plaintiff was too old for the job. (ECF No. 35 at 26 (citing Hoyt Dep. pp. 199-208.)  Defendant contends that these alleged comments were mere "stray remarks" that cannot give rise to a finding of pretext. (ECF No. 46 at 13-14.)

In *McKnight v. Kimberly Clark Corp.*, the Tenth Circuit discussed a prior case holding that "'age-related comments by non-decision makers'" were "'stray remarks' which are insufficient to establish pretext." 149 F.3d at 1129 (quoting *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)). The *McKnight* Court held that, for the plaintiff to meet her burden of showing pretext through age-related comments, she was required to show that the comments "were made by a decision

14

maker, and that there was a nexus between the discriminatory statements and the decision to terminate." *Id.*; *see also Stone*, 210 F.3d at 1140 ("Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but isolated or ambiguous comments may be, as here, too abstract to support such an inference.") (internal quotation marks omitted).

Here, the alleged discriminatory comments were made by Daniels, the ultimate decision maker in Plaintiff's termination. (*See* Daniels Dep. p. 191.) Further, all three statements refer directly to Plaintiff. In Daniels's comment to Plaintiff, his use of the word "anymore" suggests that Daniels believed Plaintiff was previously capable of performing the job but was no longer capable due to the passage of time and Plaintiff's declining health.

As for the comment that Mattern reported to Plaintiff in 2009 and the statements from Kim and Gibson, Plaintiff has not shown any temporal nexus or other connection to his termination; indeed, Plaintiff has produced no evidence indicating the basis for Kim's and Gibson's belief that Daniels terminated him based on his age.[2] However, the comment Daniels made directly to Plaintiff occurred in the fall of 2010, perhaps six months before Plaintiff received the 2010 Performance Review that ultimately led to his termination. As Daniels testified, he determined near the beginning of 2011 that

---

[2] Defendant also challenges the admissibility of these statements, arguing that they are hearsay. (ECF No. 29-1 at 14, 20.) In response, Plaintiff points out that he has disclosed Mattern, Kim, and Gibson as witnesses, and could call them at trial to testify as to what Daniels said to them, resolving any hearsay concerns. (ECF No. 35 at 26-27 n.1.) The Court notes that evidence need only be capable of being presented in an admissible form to be considered on summary judgment, and need not be actually admissible in the form presented. *See* Fed. R. Civ. P. 56(c)(2). Nevertheless, as these statements lack evidence of the nexus required to support a finding of pretext, they do not support Plaintiff's argument against summary judgment, and thus the Court need not consider Defendant's evidentiary challenge at this time.

Plaintiff's overall rating would be 4, some three months after the comment was made in the fall of 2010. (*See* Daniels Dep. p. 80-81.) While the temporal proximity of these events is more attenuated than that in similar cases, the Court finds that for the purposes of summary judgment, Plaintiff has sufficiently shown a nexus between Daniels's comment and the negative 2010 Performance Review and Development Plan. *Cf. Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

The Court concludes that Daniels's comment to Plaintiff that he should not come back to work because he "just can't handle it anymore," while not direct evidence of discrimination, was not merely a "stray remark[]". *See Stone*, 210 F.3d at 1140-41 (citing *Tomsic*, 85 F.3d at 1479). Rather, viewed in the light most favorable to Plaintiff, this comment is evidence that supports a finding of pretext.

In sum, considering this evidence, combined with the factual disputes regarding the evidence that younger comparators were treated differently, feedback for performance improvement was insufficient, and subjective evaluation criteria were used, the Court finds that a jury could make a reasonable inference of discrimination and find Defendant's purported non-discriminatory reasons "unworthy of belief." *Randle*, 69 F.3d at 451. Therefore, the evidence of pretext is sufficient to defeat summary judgment. *See Tomsic*, 85 F.3d at 1479 ("A jury may infer discriminatory animus from the simple showing of pretext, and it may find illegal discrimination upon a *prima facie* case and pretext.") (internal quotation marks omitted).

Accordingly, Defendant's Motion is denied as to Plaintiff's claim for discriminatory termination.

**B.     Retaliation**

The *McDonnell Douglas* burden-shifting analysis discussed above also applies to Plaintiff's retaliation claim. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). In order to make out a *prima facie* case of retaliation, a plaintiff must present evidence that: "(1) []he engaged in protected opposition to discrimination; (2) []he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between h[is] opposition and the employer's adverse action." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007)). "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *McGarry v. Board of Cnty. Comm'rs*, 175 F.3d 1193, 1201 (10th Cir. 1999) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

Defendant raises only one argument as to Plaintiff's retaliation claim, challenging whether Plaintiff has established a causal connection between his protected activity and his termination.[3] (ECF Nos. 29-1 at 23; 46 at 15-16.) In response, Plaintiff argues that he has established a causal connection because the temporal proximity of his February 2011 sexual harassment complaint to the 2010 Performance Review, issued in April

---

[3] Defendant raises this challenge under the pretext prong of the *McDonnell Douglas* framework. (ECF No. 29-1 at 22-23.) However, the substance of Defendant's argument also goes to the third element of Plaintiff's *prima facie* case, namely whether a causal nexus has been established between Plaintiff's opposition to discrimination and Defendant's adverse action. *Johnson*, 594 F.3d at 1215. Because the Court finds that Plaintiff's evidence sufficiently establishes a causal connection, and because the Motion here does not contest whether Plaintiff has established a *prima facie* case, the Court will discuss the issue under the pretext prong for purposes of the Motion.

2011, creates an inference of retaliation.  (ECF No. 35 at 30-32.)

Temporal proximity between protected activity and the allegedly retaliatory adverse action may combine with additional circumstantial evidence to create a fact issue as to pretext.  *See City of Prairie Village v. Butler*, 172 F.3d 736, 752 (10th Cir. 1999).  Moreover, temporal proximity can contribute to an inference of retaliation.  *Id.* at 749; *see also Trujillo v. Pacificorp*, 524 F.3d 1149, 1157 (10th Cir. 2008).

Here, Plaintiff was given his negative 2010 Performance Review and Development Plan on April 22, 2011, less than two months after his February 2011 complaint regarding sexual harassment was communicated to Daniels.  (*See* ECF Nos. 29-13, 35-4; Hoyt Dep. p. 186.)  The Performance Review and Development Plan is itself an adverse employment action, as it resulted in Plaintiff's loss of eligibility for bonus compensation and affected the likelihood of termination.[4]  *See Medina v. Income Support Division*, 413 F.3d 1131, 1137 (10th Cir. 2005) (a disciplinary proceeding, reprimand or warning may be adverse employment action "if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, . . . or affects the plaintiff's future employment opportunities.").  Furthermore, the Performance Review led directly to Plaintiff's Action Plan, which ultimately resulted in Plaintiff's termination in September 2011.

---

[4] Defendant's Motion also raises an argument that any discrimination claim based on an adverse action occurring prior to April 8, 2011 is time-barred. (ECF No. 29-1 at 10-12.)  Plaintiff concedes this, but argues that both the termination and the 2010 Performance Review and Development Plan occurred after that date, and thus are not time-barred. (ECF No. 35 at 17-19.)  The Court agrees that Plaintiff's claims are not based on any time-barred adverse actions.  Accordingly, Defendant's argument as to timeliness is moot, and the Court need not discuss it further.

Plaintiff has presented no other evidence supporting a causal connection between his complaint and his termination.  Nevertheless, the temporal proximity between Plaintiff's discrimination complaint and the 2010 Performance Review and Development Plan, combined with the disputes of fact as to Plaintiff's claim of discriminatory termination, can create an inference of retaliation in this case.  See *Trujillo*, 524 F.3d at 1157.  The Court notes that this evidence is quite limited, and that the resulting inference of retaliation is weak.  However, as Plaintiff has shown a genuine dispute of fact as to whether Defendants' proffered basis for the negative Performance Review and Development Plan was pretext for retaliation, the Court concludes that it would be inappropriate to grant summary judgment and remove the claim from consideration by the jury.  Accordingly, summary judgment is also denied as to Plaintiff's retaliation claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 29) is DENIED; and
2. This matter remains set for a four-day jury trial to commence on February 9, 2015.

Dated this 2nd day of December, 2014.

BY THE COURT:

William J. Martinez
United States District Judge